UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 11, 2016
```

------------------------------------------------------------ X
                                   :

QIANG WANG,                   :
                                   :
              Petitioner,     :
                                     :
             -v-                    :       13-cr-452 (KBF)
                                     :       15-cv-8713 (KBF)

UNITED STATES OF AMERICA,     :
                                     :       OPINION & ORDER
             Respondent.     :
------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

      The Court has reviewed petitioner Qiang Wang's <u>pro se</u> motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on grounds of ineffective assistance of counsel.  (Mot., 13-cr-452, ECF No. 31; 15-cv-8713, ECF No. 1.)[1]  Wang pled guilty on August 7, 2013 to one count of conspiracy to defraud the United States, in violation of 18 U.S.C. §§ 371 and 2.  Wang was sentenced on December 5, 2013 by this Court principally to 37 months' imprisonment, to be followed by three years of supervised release.  (ECF No. 21.)  Wang appealed his conviction and sentence.  His appellate counsel filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), and Wang filed a <u>pro se</u> appeal brief.  On August 28, 2015, the Second Circuit granted Wang's counsel's <u>Anders</u> motion, granted the Government's motion to dismiss Wang's appeal of his terms of imprisonment and supervised release, and granted the Government's motion for summary affirmance with respect to Wang's appeal in all other respects.

---

[1] Unless otherwise noted, all citations to ECF in this Opinion & Order refer to the docket in case no. 13-cr-452.

Wang now challenges his conviction and sentence on the ground that both his district court counsel and appellate counsel provided ineffective assistance.  Wang argues that his district court counsel was ineffective for, <u>inter alia</u>: (1) allowing him to plead guilty to a crime not properly charged and waive his Fifth Amendment right to indictment by a grand jury, (2) allowing the imposition of an illegal sentence due to a misapplication of the United States Sentencing Guidelines (the "Guidelines"), (3) allowing the Court to impose a sentence in violation of the principles set forth in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), (4) assuring Wang that he would receive a sentence of less than one year of incarceration, (5) allowing the Court to sentence him to supervised release following his term of imprisonment, (6) allowing Wang to waive his direct appeal rights without consideration for such waiver, and (7) failing to request a <u>Fatico</u> hearing to prove the amount of money involved in the offense.  (Pet'r's Mem. in Supp. of Mot. ("Pet'r's Mem.") at 5-27, ECF No. 32.)  Wang argues that his appellate counsel was ineffective for filing an <u>Anders</u> brief when there were meritorious appeal issues, including that Wang was not properly charged with a crime and that this Court misapplied the Guidelines.  (Pet'r's Mem. at 27-32.)  These arguments are wholly without merit, and for the reasons set forth below, Wang's motion is DENIED.

No evidentiary hearing is necessary in this action. The combined submissions of the parties provide a sufficient basis upon which to deny the petition, and the Court concludes that a full testimonial evidentiary hearing would not offer any reasonable chance of altering its view on the facts as alleged by Wang, including the

details added in his petition.  See Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (court need not hold an evidentiary hearing where the combined submissions of the parties provide a sufficient basis to deny the petition).

I.     BACKGROUND

On February 11, 2013, Wang was charged in a sealed complaint (ECF No. 1), and was arrested on February 13, 2013.  On June 14, 2013, Wang was charged in an Information with one count of conspiracy, in violation of 18 U.S.C. §§ 371 and 2 (Count One), and one count of smuggling, in violation of 18 U.S.C. §§ 554 and 2 (Count Two).  (Information, ECF No. 12.)  The charges stemmed from Wang's participation in a conspiracy to smuggle objects containing rhinoceros horn and elephant ivory out of the United States and into Hong Kong and China, knowing that their exportation was prohibited by law.

On August 7, 2013, Wang pled guilty to Count One of the Information pursuant to a plea agreement with the Government (the "Plea Agreement").  (See Plea Tr., ECF No. 17.)  In the Plea Agreement, the parties stipulated that Wang's Guidelines offense level for Count One was 21, which, in turn, was based in part on the parties' stipulation that the loss resulting from the offenses was greater than $1 million but less than $2.5 million; the parties also stipulated that Wang's criminal history category was I.  (Gov't's Opp. Mem. of Law ("Gov't's Mem."), Ex. A, ECF No. 36-1.)  The parties also stipulated that the applicable Guidelines range was 37 to 46 months' imprisonment.  (Id.)  Wang also agreed, in the Plea Agreement, that he would not, inter alia, file a direct appeal, bring a collateral challenge, or seek a sentence modification pursuant to 18 U.S.C. § 3582(c) of any sentence within or

below the stipulated Guidelines range of 37 to 46 months' imprisonment or any term of supervised release less than or equal to the statutory maximum of three years.  (Id.)

At his August 7, 2013 plea hearing, Wang, through an interpreter, either affirmatively stated or affirmed his understanding of—among other things—the following facts, while under oath:[2]

- At the outset of the hearing, the Court informed Wang that while he had signed the plea agreement, he had not yet entered a guilty plea and that he would only give up his right to go to trial if he pleaded guilty later in the proceedings when the Court would ask for his plea.  (Plea Tr. 2:24-3:6.)

- Wang understood that if while either during or after the Court explained the rights that he had and the rights he would lose and the consequences that would flow from entering a guilty plea, he could change his mind before entering a plea and would not have to enter a guilty plea.  (Id. at 3:7-13, 11:17-21.)

- Wang affirmed that he had discussed the consequences of entering a guilty plea with his counsel, David Colgan, and any defenses that he might have to the charge contained in the Information.  (Id. at 9:3-9.)

---

[2] The Court also confirmed, after inquiring into Wang's mental health and his understanding of the interpreter, that he was competent to enter a plea should he choose to do so.  (Plea Tr. 7:15-17, 8:2-4.)

- Wang understood that by entering a guilty plea, he was giving up his right to go to trial, and the various rights relating to trial.  (Id. at 9:10-11:10.)

- Wang understood that his plea agreement with the Government was not binding on the Court and that it was not an agreement with the Court.  (Id. at 14:25-15:9.)

- Wang understood that even if his sentence ended up being different than what he expected or hoped it would be, he would be bound by his guilty plea and would not be able to withdraw that plea later.  (Id. at 15:16-21.)

- Wang affirmed that no one had threatened, coerced or forced him in any way to plead guilty.  (Id. at 15:25-16:4.)

- Wang affirmed that he understood and signed the plea agreement and that no one forced him to sign it.  (Id. at 16:5-21, 17:25-18:2.)

- Wang understood that the Court would not be required to sentence him within the Guidelines range to which he had agreed with the Government, that the Court had discretion to sentence him as it deemed appropriate under the statutory maximum of five years' imprisonment, and that his sentence could be higher or lower than the stipulated Guidelines range of 37 to 46 months.  (Id. at 16:22-17:16.)

- Wang understood that by entering a guilty plea pursuant to the Plea Agreement, he was giving up his right to file a direct appeal or to bring a collateral challenge, including a petition for habeas corpus, or to seek a

sentence modification of any sentence within or below the stipulated Guidelines range of 37 to 46 months.  (Id. at 18:3-13.)

- Wang understood that if he pleaded guilty pursuant to the Plea Agreement, he could only appeal that portion of his sentence that was above 46 months' imprisonment.  (Id. at 18:14-19:2.)

- Wang understood that if he pleaded guilty he was giving up his right to appeal any period of supervised release less than or equal to the statutory maximum of three years.  (Id. at 19:3-8.)

- Wang affirmed that no one had made any promise to him to make him plead guilty or that anyone told him that the Court would not send him to jail if he pleaded guilty.  (Id. at 19:18-23.)

- In response to the Court's inquiry into the factual basis for Wang's desire to plead guilty, Wang affirmed that between 2011 and 2013 he had agreed with at least one other person to export objects that he knew contained rhinoceros horn and elephant ivory, and that he had intentionally labeled the shipments of those objects in a way that attempted to portray the items as something other than what they were because he knew that exporting such objects was wrong.  (Id. at 22:11-24, 23:22-24:4.)

- Wang affirmed that when shipping the objects that he knew contained rhinoceros horn and elephant ivory, he did not obtain (or attempt to obtain) permission from any governmental agency or entity.  (Id. at 24:14-21.)

- After being told that if he pleaded guilty he would be giving up his right to go to trial and the other consequences that the Court discussed that could flow from the entry of a guilty plea, Wang pleaded guilty to Count One of the Information.  (Id. at 25:15-21.)

On December 5, 2013, Wang appeared before this Court for sentencing.  (See Sent. Tr., ECF No. 26.)  The Court heard from Wang's counsel, who asked for a sentence of five years' probation.  (Id. at 12:1-28:11.)  The Court then heard from Wang, who expressed remorse and apologized to the people he hurt as a result of his conduct, including his family and friends, and the United States.  (Id. at 28:20-30:17.)  After hearing from the parties, the Court confirmed that it agreed with the Presentence Investigation Report's ("PSR") Guidelines calculation, which was the same calculation reflected in the Plea Agreement.  (Id. at 35:11-21.)  After considering and discussing the factors set forth in 18 U.S.C. § 3553(a), the Court sentenced Wang to 37 months' imprisonment (the bottom of the Guidelines range to which the parties had agreed in the Plea Agreement), to be followed by three years of supervised release, and imposed a $100 mandatory special assessment.  (ECF No. 21; see also Sent. Tr. 35-45.)

On December 16, 2013, Wang timely filed a notice of appeal.  (ECF No. 23.) On April 14, 2014, Wang's initial appellate counsel—who had not represented him in this Court—filed an appellate brief.  (See Gov't Mem. at 12, ECF No. 36.)  The Government filed its opposition brief on July 15, 2014.  (See id.)  Wang's appellate counsel moved to withdraw as counsel, which the Second Circuit granted on August

7

13, 2014; the Second Circuit also deemed Wang's appellate brief withdrawn and appointed new counsel. (Id. at 12-13.) On September 23, 2014, Wang's newly-appointed counsel filed an Anders brief, stating that after reviewing the record, counsel concluded that there were no meritorious or non-frivolous issues to be raised on appeal. (Id. at 13.) On January 16, 2015, Wang filed a pro se response to his counsel's Anders brief, arguing that there were meritorious issues for appeal. (Id.) On April 21, 2015, the Government moved to dismiss Wang's appeal as barred by the waiver of appellate rights contained in his plea agreement, or for summary affirmance of his conviction and sentence. (Id.) On August 28, 2015, the Second Circuit granted Wang's counsel's Anders motion, granted the Government's motion to dismiss Wang's appeal of his terms of imprisonment and supervised release, and granted the Government's motion for summary affirmance of Wang's appeal of his conviction, forfeiture and special assessment. (Gov't Mem., Ex. D, ECF No. 36-4.)

On or about October 30, 2015, Wang timely brought the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 31.) On March 1, 2016, the Government filed its opposition to Wang's petition. (ECF No. 36.) As set forth in the Court's November 9, 2015 Order (ECF No. 33), Wang's reply brief was due not later than 30 days after the Government filed its opposition. Wang's reply was thus due on April 4, 2016. To date, Wang has not submitted a reply brief, nor has he requested an extension of time to do so.

## II.    LEGAL STANDARDS

### A.    Bar on Raising Issues That Were Raised or Could Have Been Raised on Direct Appeal

"In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal."  United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011).  "An exception applies, however, if the defendant establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence."  Id.  This procedural bar "does not generally apply to claims of ineffective assistance of counsel."  Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007).

### B.    Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his or her counsel's performance "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and (2) he or she was prejudiced by counsel's deficient performance such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington. 466 U.S. 668, 687-88, 694 (1984).

As to the first prong of Strickland, attorney conduct is subject to an objective standard of reasonableness, and is accorded deference in light of the "range of legitimate decisions" that accompanies the various circumstances encountered by counsel.  Id. at 688-89.  As a result, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (alterations and quotation marks omitted) (quoting Strickland, 466 U.S. at 689).

As to the second prong of Strickland, a petitioner must show that, but for his or her attorney's deficient performance, there is a reasonable probability that the result would have been different. Strickland, 466 U.S. at 694.  More is required than a mere showing "that the errors had some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. at 693.

III.   DISCUSSION

Wang argues that he received ineffective assistance of counsel at both the district court and appellate levels on numerous grounds.  His arguments relating to his district court counsel's performance may be broken down into two categories. The first category includes claims in which Wang asserts that his counsel's deficient performance rendered his guilty plea—and resulting waiver of appeal rights— involuntary and unknowing; the second category consists of claims that counsel was deficient in relation to Wang's sentence.  As to his appellate counsel, Wang argues that his counsel was ineffective for filing an Anders brief when there existed meritorious issues for appeal.  As explained below, all of these claims are without any merit.  As explained below, Wang validly, knowingly and voluntarily waived his right to pursue an appeal or collateral attack on his conviction and sentence.  To the

extent that he has not waived certain grounds for collaterally attacking his sentence (i.e. claims relating to whether his guilty plea was knowing and voluntary), his claims are baseless.

At the outset, Wang's claims generally fail because he expressly waived his right to collaterally attack any sentence of 46 months' imprisonment or less by pleading guilty pursuant to his Plea Agreement.  "'It is well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable.'"  United States v. Lee, 523 F.3d 104, 106 (2d Cir. 2008) (quoting United States v. Djelevic, 161 F.3d 104, 106 (2d Cir. 1998)) (alterations omitted); see also Garcia-Santos v. United States, 273 F.3d 506, 508 (2d Cir. 2001).  "To raise a claim despite a guilty plea or appeal waiver, the petitioner must show that the plea agreement was not knowing and voluntary because the advice he received from counsel was not within acceptable standards."  Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (citation and quotation marks omitted).  Because the Court sentenced Wang to a term of 37 months' imprisonment, which was within the Guidelines range stipulated to in his Plea Agreement (and in fact was at the lower bound of that range), he has waived his right to pursue this collateral attack on his conviction and sentence to the extent that his guilty plea and waiver of his appeal rights was knowing and voluntary.

The proposition that Wang's guilty plea and waiver of appeal rights was knowing and voluntary is well-supported by the record.  At the start of the plea hearing, the Court ensured that Wang was competent to enter a guilty plea and

that he understood the interpreter.  (Plea Tr. 7:15-17, 8:2-4.)  The Court confirmed

that Wang had a full opportunity to discuss his case with his attorney and review

the consequences of his guilty plea, and that Wang was satisfied with his attorney's

representation.  (Id. at 8:25-9:9.)  The Court also ensured that Wang understood

and signed the Plea Agreement, that no one forced him in any way to sign the Plea

Agreement or enter a plea of guilty, and that no one made any promise to him or

told him that the Court would not sentence him to a term of imprisonment.  (Id. at

15:25-16:21, 17:25-18:2, 19:18-23.)  The Court informed Wang—and confirmed his

understanding—of the nature of the charges against him and the maximum

penalties that he faced if he entered a guilty plea.  (Id. at 13:6-14:20.)  The Court

ensured that Wang was aware of all of the rights he was giving up by pleading

guilty, including his waiver of his right to file a direct appeal, bring a collateral

challenge, or seek a sentence modification of any sentence within or below the

stipulated Guidelines range of 37 to 46 months, as stated in his Plea Agreement.

(Id. at 18:3-19:2.)  The Court also ensured that Wang understood that by pleading

guilty he was giving up his right to appeal any period of supervised release up to

and including the three year statutory maximum.  (Id. at 19:3-8.)  Wang affirmed

that he committed the crime to which he pleaded guilty, and at his sentencing

hearing he acknowledged his guilt and apologized for his wrongful conduct in his

address to the Court.  (Id. at 25:15-21; Sent Tr. 35:11-21.)  In contrast to the

foregoing, there is no indication in the record that Wang's counsel's representation

relating to his guilty plea fell below acceptable standards, or that counsel did

anything to render Wang's guilty plea unknowing or involuntary.  Wang raises multiple grounds for asserting that his counsel performed deficiently and rendered his guilty plea unknowing and involuntary—all are without merit.  The Court takes each in turn.

Wang claims that his guilty plea was defective because his counsel prevented him from knowingly and voluntarily waiving his Fifth Amendment right to indictment by a grand jury.  (Pet'r's Mem. at 8-11.)  Wang's basis for this assertion is that the Information failed to charge an offense against the United States because Wang did not in fact export objects containing rhinoceros horn and elephant ivory, but rather only re-exported such objects.  The Court rejects this argument because there is no basis in the relevant statutes or regulations to make a distinction between exportation and re-exportation.  See 16 U.S.C. § 1538(c); 50 C.F.R. § 14.4; cf. United States v. Ehsan, 163 F.3d 855, 858-59 (4th Cir. 1998) (discussing meaning of "exporting" in another context).  The Information thus did not fail to allege an offense against the United States.

Wang also argues that his plea was not knowing and voluntary because his counsel allowed the Court to misapply the Guidelines when the Court determined that the fair market value of the contraband items that Wang unlawfully exported was greater than $1,000,000.  (Pet'r's Mem. at 11-16.)  This argument is meritless. First, it is unclear how this Court's calculation of this figure could have rendered Wang's guilty plea unknowing or involuntary, particularly as the Court did not make this determination until sentencing and at the plea hearing confirmed that

Wang understood that the Court was not bound by the parties' stipulated Guidelines range (which the Court adopted in any event).  (Plea Tr. 16:22-17:16.) Second, even if this claim could somehow bear on whether Wang's plea was knowing and voluntary, his claim is meritless because the Court correctly applied the Guidelines in determining the value of contraband; as a result, Wang's counsel's failure to object did not fall below acceptable standards or cause Wang any prejudice.  The Court's calculation was based on the price that Wang paid for the objects at an open market auction, and the relevant Guidelines provision, U.S.S.G. § 2Q2.1, provides that market value should be determined based on the fair market retail price, which is what was done in this case.  U.S.S.G. § 2Q2.1, cmt. n. 4.  Any advice that Wang's counsel provided with respect to this issue therefore could not have rendered Wang's waiver of appeal rights unknowing or involuntary.

Wang further argues that his plea was not knowing and voluntary because his counsel assured him that he would receive a sentence of less than one year of incarceration.  (Pet'r's Mem. at 18-19.)  This claim is belied by Wang's testimony under oath during his plea allocution, and therefore highly incredible.  As the Court has explained above, Wang affirmed that he understood the maximum possible penalties that he faced and that neither his attorney nor the Government could know what his sentence would be.  Wang also affirmed that no one had coerced him or made any promise to him about what his sentence would be if he pleaded guilty. Wang's bare allegations in his petition as to the representations that his counsel made to him cannot overcome his statements under oath during his plea allocution,

which "carry a strong presumption of verity." Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013); see also United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (per curiam).

Wang also argues that his plea was not knowing and voluntary because his counsel was ineffective for allowing him to waive his direct appeal rights without any consideration for such waiver and without Wang being fully informed of the waiver of his appeal rights. (Pet'r's Mem. at 24-26.) Again, this argument is belied by the record, as Wang affirmed at several instances during the plea hearing that he understood the scope of his waiver of appeal rights. Wang also provides no support—and the Court has found none—for his contention that his waiver of appeal rights in the Plea Agreement was made without any consideration or that his sentence was based on constitutionally impermissible factors.

Wang's petition asserts three additional arguments relating to his district court counsel's representation that are unrelated to the question of whether counsel rendered ineffective assistance in relation to Wang's guilty plea. At the outset, because the Court has determined that Wang knowingly and voluntarily entered his guilty plea pursuant to the Plea Agreement—whereby he waived his right to file a direct appeal, bring a collateral attack or seek modification of his sentence if the Court sentenced him to a term of imprisonment of not greater than 46 months—all of Wang's remaining claims have been waived. E.g., Lee, 523 F.3d at 106. Even if

15

such claims had not been waived pursuant to the valid and binding plea agreement, the Court nonetheless rejects Wang's claims on the merits.[3]

First, Wang claims that his counsel was ineffective because he allowed this Court to impose an illegal sentence in violation of the principles of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), based on the Court's determination of the market value of the objects that Wang unlawfully exported. (Pet'r's Mem. at 16-18.) This argument is meritless because the sentence imposed fully complied with <u>Apprendi</u> and all other applicable and binding precedent. The Court imposed a sentence both within the Guidelines range that the parties stipulated to in the Plea Agreement and below the five year statutory maximum for the offense of conviction.

Second, Wang argues that his counsel was ineffective for allowing the Court to impose a term of consecutive supervised release after imposing a term of incarceration on the ground that the Court lacked jurisdiction to do so because the statute upon which he was convicted does not prescribe any term of supervised release. (Pet'r's Mem. at 19-24.) This argument is frivolous. The Court's imposition of a term of three years of supervised release following Wang's period of incarceration was authorized by 18 U.S.C. § 3583(a).

Third, Wang argues that his counsel was ineffective for failing to request a <u>Fatico</u> hearing to determine, <u>inter alia</u>, the value of the contraband objects that Wang exported. (Pet'r's Mem. at 26-27.) This argument fails because counsel's strategic decision not to request a <u>Fatico</u> hearing fell well within the range of

---

[3] The Court notes that Wang raised many of the arguments asserted in the instant petition in his <u>pro se</u> response to his counsel's <u>Anders</u> brief in the Second Circuit, and that the Second Circuit summarily rejected all of Wang's arguments. (Gov't Mem., Ex. D.)

16

acceptable professional standards, see Rosenberger v. United States, 133 F. App'x 799, 801 (2d Cir. 2005) (summary order); United States v. Lee, 818 F.2d 1052, 1056 (2d Cir. 1987), and there were no issues in dispute that would have rendered a Fatico hearing necessary or appropriate.

   In addition to Wang's arguments relating to his district court counsel, Wang also argues that his appellate counsel's performance was constitutionally deficient because counsel filed an Anders brief despite the existence of meritorious issues for appeal.  (Pet'r's Mem. at 27-32.)  This argument is without merit, as counsel appropriately explained in his Anders brief that Wang had voluntarily pled guilty and validly waived his right to file an appeal and that there were no meritorious issues for appeal.  Anim v. United States, No. 12 Civ. 3426(KMW), 2013 WL 4056211, at *7 (S.D.N.Y. Aug. 12, 2013); Jorge v. United States, 818 F. Supp. 55, 57 (S.D.N.Y. 1993).  Furthermore, in granting counsel's Anders motion as well as the Government's motion for summary affirmance following Wang's pro se opposition to his counsel's Anders brief (in which Wang essentially raised the same arguments that he advances here), the Second Circuit has already concluded that there were no meritorious issues for counsel to have raised.

## IV.  CONCLUSION

   For the reasons set forth above, Wang's petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is DENIED.

   The Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012).  The

Court also finds, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the denial of this motion would not be taken in good faith.  See Feliz v. United States, Nos. 01 Civ. 5544(JFK), 00 CR. 53(JFK), 2002 WL 1964347, at *7 (S.D.N.Y. 2002).

The Clerk of the Court is directed to terminate the motion at ECF No. 31 in 13-cr-452 and to terminate the action in 15-cv-8713.

SO ORDERED.

Dated:      New York, New York
            April 11, 2016


_____
    KATHERINE B. FORREST
    United States District Judge

Copy to:
Qiang Wang
68119-054
Moshannon Valley Correctional Center
Unit A3/002U
555-I Geo Drive
Philipsburg, PA 16866-8139